UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

BRASHARD DELANEY,

                Plaintiff,

v.

SARAH SCHROEDER et al.,

                Defendants.

_____/

Case No. 2:25-cv-45

Honorable Maarten Vermaat

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.  The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Further, under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21.

Applying these standards, the Court will drop Defendants Johnson, McAdams, Baldini, Harry, and Unknown Supervisor #1 from this action and dismiss Plaintiff's claims against them because they are misjoined; the Court will deny Plaintiff's motion to amend his complaint; and the Court will partially dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

about which he complains occurred at that facility. Plaintiff sues **MDOC Director Heidi E. Washington** and the following MBP personnel: **Warden Sarah Schroeder; Health Unit Manager Charles Scott; Unknown Supervisor #1; Sergeant Unknown Baldini; Corrections Officers Unknown Johnson, Unknown Harry, Unknown McAdams, and Unknown Brisette; and Registered Nurses Christy Negrinelli** and **Kelly Suvanto.** Plaintiff sues each Defendant in his or her respective personal and official capacities.

Plaintiff alleges that since incidents at Baraga Correctional Facility and MBP on August 30, 2024, he has experienced sharp pains on the left side of his body and persistent, painful migraine headaches. (Compl., ECF No. 1, PageID.7, ¶¶ 1–2.) Approximately ten weeks after those incidents, on November 13, 2024, Plaintiff filled out a healthcare kite describing painful and persistent migraine headaches. Defendant Negrinelli picked up the kite during morning medical rounds. (*Id.*, PageID.8, ¶ 7.)

The next week, on November 19, 2024, while he was being seen by Defendant Suvanto for a diabetic check-up, Plaintiff told Defendant Suvanto about his migraines. (*Id.* ¶ 3.) Defendant Suvanto gave Plaintiff "a handful of Tylenol and said, 'if these work, kite me and I'll write you a prescription.'"[2] (*Id.*)

Three days later, on November 22, 2024, Defendant Brisette was escorting Plaintiff into the unit from the yard. (*Id.* ¶ 4.) At the same time, Defendant Suvanto was heading into D-Block. (*Id.*) Defendant Brisette paused and said, among other things, "stay away from my girlfriend. Stay away from the nurses with your grievances." (*Id.*, PageID.7–8, ¶ 4.) Defendant "then began to playfully tug the leash the Plaintiff was handcuffed to." (*Id.*, PageID.8, ¶ 4.) When Plaintiff told

---

[2] In this opinion, the Court corrects the capitalization, spelling, and punctuation in quotations from Plaintiff's complaint.

Defendant Brisette to "stop playing with him," Defendant Briesette came "crashing" into Plaintiff making contact between Brisette's groin and Plaintiff's butt. (*Id.*)

Four days later, on November 26, 2024, Plaintiff sent in a complaint raising claims under 42 U.S.C. § 1983 against MBP healthcare nurses, a doctor, the health unit manager, and other MDOC custodial staff. (*Id.* ¶ 5.) The complaint at issue was Plaintiff's first amended complaint in *Delaney v. Schroeder*, No. 2:24-cv-172 (W.D. Mich.). The first amended complaint did not name any of the Defendants named in this action other than Warden Schroeder. *Id.* (ECF No. 3).

On December 1, 2024, Defendant Suvanto picked up a healthcare kite from Plaintiff's cell. (*Id.* ¶ 6.) In the kite, Plaintiff described painful and persistent migraine headaches. (*Id.*) On December 13, 2024, Defendant Negrinelli picked up a healthcare kite wherein Plaintiff again complained of painful and persistent migraine headaches. (*Id.* ¶ 7.) Plaintiff notes that, "normally when you file a healthcare kite you receive a 'medical response receipt' with an action plan," suggesting that in this instance he did not receive a medical response receipt or an action plan. (*Id.* ¶ 6.)

Plaintiff contends that prior to filing his first amended complaint in *Delaney v. Schroeder*, No. 2:24-cv-172 (W.D. Mich.), for failure to treat Plaintiff's chronic asthma, he "was seen for routine issues and healthcare kites were processed and responded to." (Compl., ECF No. 1, PageID.9, ¶ 8.) Since filing that suit, however, Plaintiff reports that he has not been seen by healthcare at all and has not received a medical response receipt with action plan in response to any of the 4+ healthcare kites[3] he has filed regarding his persistent migraine headaches. (*Id.* ¶ 9.)

---

[3] Plaintiff attached several healthcare kites requesting assistance for his migraines as supplemental exhibits in *Delaney v. Waltanen*, No. 2:24-cv-194 (W.D. Mich.) (ECF Nos. 11-1–11-5). Three of those kites relate to the time frame covered in Plaintiff's complaint. On November 11, 2024, Plaintiff advised the healthcare department that he was suffering migraines and needed to see a doctor. *Id.*, (ECF No. 11-3). On December 1, 2024, Plaintiff advised the healthcare department

Because he did not receive a "medical response receipt" with action plan, he concludes that his medical kites were intentionally destroyed in retaliation for filing the civil suit against "co-workers and supervisors." (*Id*.) Plaintiff does not identify who he believes destroyed the kites.

Plaintiff then provides his reading of several excerpts from the MDOC policy directive regarding the provision of healthcare, specifically provisions regarding the submission of healthcare requests, the processing of such requests, and the proper timing of responses to such requests. (*Id*., PageID.9–10, ¶¶ 10–13.) Plaintiff's allegations suggest that the policies were not followed with respect to his December 1 and December 13 healthcare requests; however, he does not state at what step the process failed or who was responsible for the failure.

On February 15, 2025, ten weeks after Defendant Suvanto picked up Plaintiff's December 1, kite—and four days after Plaintiff's step II grievance was received by the grievance coordinator[4]—Defendant Johnson, Defendant Negrinelli's boyfriend according to Plaintiff—worked on E Block. (*Id*., PageID.10–11, ¶ 14.) Defendant Johnson had not worked on that block since Plaintiff's arrival at MBP. (*Id*.) Defendant Johnson refused to feed Plaintiff his lunch tray that day. (*Id*., PageID.11, ¶ 15.)

The next day, Defendant Johnson extracted a prisoner housed in the cell above Plaintiff. (*Id*.) Plaintiff reports that a weapon was discovered. (*Id*.) That prisoner said that the weapon "was

---

that the Motrin and Tylenol that had been provided to him helped. *Id*., (ECF No. 11-4). On December 13, 2024, Plaintiff advised the healthcare department that he had run out of Tylenol and that his condition was emergent. *Id*., (ECF No. 11-5). It is noteworthy that Plaintiff's December 13 kite claims that his December 1 kite reported he was out of Tylenol. That is not the case.

[4] Plaintiff's complaint allegations offer no clue as to when he filed a Step I grievance, who he filed the grievance against, or the subject matter of the grievance. Plaintiff's exhibits in *Delaney v. Waltanen*, No. 2:24-cv-194 (W.D. Mich.), however, include several grievances filed by Plaintiff including a January 7, 2025, grievance that references a December 19, 2025, grievance that Plaintiff filed against Nurse Suvanto and Nurse Negrinelli. *Id*., (ECF No. 13-1, PageID.142.)

planted by C/O Johnson." (*Id*.) Plaintiff interprets Defendant Johnson's actions with regard to the other prisoner as "an act of intimidation and a subtle threat" against Plaintiff. (*Id*. ¶ 16.)

On February 26, 2025, Plaintiff sent in a step III grievance on "nursing staff retaliation." (*Id*. ¶ 17.)

On March 1, 2025, Plaintiff had a visitor. (*Id*. ¶ 18.) Plaintiff was taken to the visitor room by Defendant Harry. (*Id*.) The video visit was not connected. (*Id*.) Plaintiff asked Defendant McAdams why the visit was not connected. (*Id*.) Defendant McAdams said she would call "up front." (*Id*.) A few minutes later, Defendant McAdams advised Plaintiff his visitor would probably have to reschedule and return another time. (*Id*. ¶ 19.) Plaintiff asked McAdams who was in charge of the visits at that time. (*Id*.) Defendant McAdams informed Plaintiff it was "Baldini." (*Id*.)

Plaintiff acknowledges that he did not specifically name any of those people in his civil suit, but he did include several "unknown" parties. (*Id*.) Moreover, there is a nurse employed at MBP with the surname "Baldini." (*Id*.) Plaintiff posits that the two Baldinis are "spouses, relatives, [or] sweethearts." (*Id*., PageID.12, ¶ 21.) Plaintiff communicated all of these theories to an attorney from the Michigan Civil Rights organization during a telephone call on March 3, 2025. (*Id*., ¶ 22.)

On March 5, 2025, Plaintiff received mail from his girlfriend, the prospective visitor from March 1. (*Id*. ¶ 23.) She informed Plaintiff that she waited 20 minutes in front of the screen, but she was never connected. (*Id*.) She also told Plaintiff that she had rescheduled a visit for March 8. (*Id*.)

On March 6, 2025, Plaintiff sent out legal mail to the Office of Legal Affairs, the Department of Justice, the Attorney General, and a lawyer. (*Id*. ¶ 24.) Each letter complained of retaliation. (*Id*.) Plaintiff does not identify the retaliators or their respective reasons for retaliation.

On March 8, 2025, Plaintiff reports that he was never taken to his scheduled visit by Defendant Harry. (*Id*. ¶ 25.) Moreover, Defendant Unknown Supervisor #1 never connected Plaintiff's visitor. (*Id*.)

Plaintiff notes that Defendant Harry is also a defendant in another civil suit filed by Plaintiff. (*Id*.) Other than the instant action, the Court finds only one suit that Plaintiff has filed naming Officer Harry as a defendant: *Delaney v. Schroeder*, No. 2:25-cv-75 (W.D. Mich.) By opinion and judgment entered July 23, 2025, Plaintiff's claims against Officer Harry were dismissed because Plaintiff failed to state a claim on which relief might be granted. *Delaney v. Schroeder*, No. 2:25-cv-75, 2025 WL 1510010 (W.D. Mich. July 23, 2025). Plaintiff also states that he sent out a grievance on February 26, 2025, apparently against Defendant Harry, alleging sexual abuse and harassment. (Compl., ECF No. 1, PageID.13, ¶ 26.) Plaintiff contends that every time he files a grievance or sends in a Step III grievance to Lansing, he is being retaliated against.

Plaintiff has informed Defendant Schroeder of the problems he has had with visitation and retaliation through the grievance process. (*Id*. ¶ 28.) Plaintiff alleges that Defendant Schroeder is responsible because it is staff "under her watch" that have been retaliating. (*Id*.)

Plaintiff seeks $300,000.00 in compensatory damages for the pain and suffering he has endured. (*Id*., PageID.15.)

## II. Misjoinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied); *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) ("Unrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). A district judge necessarily has considerable discretion in applying Rules 18 and 20. The rules 'operate[ ] independently' because Rule 20 contains limitations that Rule 18 does not, and the Rule 20 inquiry comes first.").

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim or claims against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . .

9

are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

Permitting improper joinder in a prisoner civil rights action undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should his misjoined claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

10

Here, Defendant Nurse Kelly Suvanto is the first party mentioned in Plaintiff's factual allegations. (*See* Compl., ECF No. 1, PageID.7.)[5] Plaintiff alleges that he told Defendant Suvanto that he was suffering persistent and painful migraines and she provided Plaintiff Tylenol in response. (*Id*.) Plaintiff claims that Defendant Suvanto retaliated against Plaintiff for filing a complaint naming corrections officers and healthcare staff at the end of November 2024. Am. Compl., *Delaney v. Schroeder*, No. 2:24-cv-172 (W.D. Mich.) (ECF No. 4). It is difficult to identify the exact nature of the retaliatory conduct. Plaintiff says she picked up his December 1 healthcare kite. He opines that the kite was destroyed because he never received a response. But he does not state who destroyed the kite. (Compl., ECF No. 1, PageID.9.)

Plaintiff raises the same claims—First Amendment retaliation and Eighth Amendment deliberate indifference to a serious medical need—against Defendant Negrinelli. As the allegations are proximate in time and relate to the same conduct, the Court will consider Plaintiff's allegations against Defendant Negrinelli to be transactionally related to Plaintiff's claims against Defendant Suvanto.

Plaintiff contends that Defendant Scott is liable because of his failure to supervise Defendants Suvanto and Negrinelli. Accordingly, the Court concludes that Plaintiff's claims against Defendant Scott are transactionally related to Plaintiff's claims against Defendant Suvanto. Similarly, Plaintiff claims that Defendants Schroeder and Washington are liable because of their failures to supervise their subordinates. Because Defendant Suvanto is a subordinate of Defendants

---

[5] The analysis of joinder must start somewhere. By accepting the first-mentioned Defendant and the factual allegations against the first-mentioned Defendant as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

Schroeder and Washington, the Court concludes that Plaintiff's claims against the Warden and MDOC Director are also transactionally related to his claims against Defendant Suvanto.

Plaintiff contends that Defendant Brisette yanked on Plaintiff's "leash" causing a collision between the two men, Defendant Brisette suggested to Plaintiff that Defendant Suvanto was the officer's girlfriend, and Defendant Brisette told Plaintiff to "stay away from the nurses with your grievances." (*Id*. PageID.7–8.) Plaintiff states that Defendant Brisette used excessive force in violation of the Eighth Amendment and that the use of force was retaliatory, apparently in the hope of preventing future grievances, in violation of the First Amendment.

The conduct underlying Plaintiff's claims against Defendant Brisette involves both Eighth and First Amendment violations just as the conduct underlying Plaintiff's claims against Defendant Suvanto does. Moreover, Defendant Brisette's conduct occurs in the same three- or four-week window that Defendant Suvanto's conduct occurred. Beyond those similarities, however, there does not appear to be much of a relationship between the claims. Defendant Suvanto is purportedly retaliating against Plaintiff for the amended complaint he filed at the end of November. Defendant Brisette is purportedly retaliating for protected conduct that had not yet occurred. Nonetheless, reading Plaintiff's complaint indulgently, the Court concludes that Plaintiff's claims against Brisette are at least minimally related to Plaintiff's claims against Defendant Suvanto and, for that reason, they may involve common issues of fact.

Plaintiff alleges that Defendants Johnson, McAdams, Baldini, Harry, and Unknown Supervisor #1, retaliated against Plaintiff for filing (or continuing to pursue) his grievance against Defendants Suvanto and Negrinelli. Plaintiff states that Johnson retaliated against Plaintiff by denying him a meal and planting a weapon in the cell of another prisoner after Plaintiff filed the Step II appeal of that grievance. Plaintiff concludes that the other Defendants retaliated against

Plaintiff by interfering with one or more video visits in temporal proximity to Plaintiff's filing of the Step III appeal of that grievance. These allegations have no connection to Plaintiff's claims against Suvanto. They are not transactionally related and do not involve common questions of fact. Accordingly, the Court concludes that Defendants Johnson, McAdams, Baldini, Harry, and Unknown Supervisor #1 are misjoined.

Because the Court has concluded that Plaintiff has improperly joined Defendants Johnson, McAdams, Baldini, Harry, and Unknown Supervisor #1, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely

claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Plaintiff's allegations against these Defendants relate to events that occurred in 2025. (*See generally* Compl., ECF No. 1.) Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against the misjoined Defendants. Therefore, Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if his claims against the misjoined Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Johnson, McAdams, Baldini, Harry, and Unknown Supervisor #1,because they are misjoined. The Court will dismiss Plaintiff's claims against these individuals without prejudice to the institution of a new, separate lawsuit or lawsuits.[6]

---

[6] If Plaintiff wishes to proceed with his claims against one or more of the misjoined Defendants, he may do so by filing new civil action(s) on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fees or applying in the manner required by law to proceed *in forma pauperis*. As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined. Plaintiff is advised that simply because separate and discrete events occurred during Plaintiff's incarceration at a particular correctional facility does not mean that all claims arising out of these events are properly joined.

### III.    Motion to Amend the Complaint

More than four months after Plaintiff mailed his initial complaint, he filed a motion seeking leave to amend his complaint. (ECF No. 7.) In lieu of providing a proposed amended complaint, Plaintiff identified fifteen paragraphs that he would like to add to his initial complaint. (*Id*., PageID.44–47.) Specifically, Plaintiff seeks to add two claims—a retaliation claim and a claim for the use of excessive force—against an MBP employee who was not named in the initial complaint, Corrections Officer Nolan. The allegations that Plaintiff raises regarding Officer Nolan are very similar to Plaintiff's allegations against Defendant Brisette. Indeed, Plaintiff notes the similarity in his complaint: "The actions the plaintiff describes C/O Nolan conducted in [¶¶] 37–40 [are] actions the plaintiff described C/O Brisette did in paragraph four of complaint 2:25-cv-00045." (*Id*., PageID.47.) Plaintiff contends that during July of 2025 Officer Nolan advised Plaintiff to stay away from the nurses, Zee, and Brisette. Two days later, Officer Nolan yanked on Plaintiff's leash causing pain. Plaintiff turned in response. That action pulled the leash from Officer Nolan. Officer Nolan then wrote a false misconduct ticket against Plaintiff. Plaintiff contends that Officer Nolan used excessive force and wrote the false misconduct in retaliation for Plaintiff's filing of other lawsuits and this one.

The Federal Rules of Civil Procedure permit a litigant one amendment as of right. Fed. R. Civ. P. 15(a). Here, however, Plaintiff proposes to add to his complaint allegations regarding events that occurred subsequent to the filing of the initial complaint. Under Federal Rule of Civil Procedure 15(d), a subsequent "pleading setting out any transaction, occurrence, or event that happened after the date of the [initial] pleading" is a supplement. Fed. R. Civ. P. 15(d). Filing such a "supplement" requires leave of court. *Id*.

The standard for granting leave to supplement under Rule 15(d) is identical to the standard governing leave to amend under Rule 15(a)(2). *See Spies v. Voinovich*, 48 F. App'x 520, 527 (6th

Cir. 2002). In other words, leave to supplement "should [be] freely given[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court identified some circumstances in which "justice" might counsel against granting leave: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id*. at 182. If a claim would be properly dismissed, amendment to add the claim would be futile. *Thiokol Corp. v. Michigan Dep't of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993). For the reasons set forth below, the Court concludes that justice supports denying Plaintiff's motion.

Plaintiff's proposed retaliation and excessive force claims against Officer Nolan are in no way transactionally related to his claims against Defendant Suvanto. Accordingly, Officer Nolan is not properly joined to this action and an amendment to add him would be futile. Plaintiff's motion to amend his complaint will be denied.

## IV.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff sets out the specific claims he intended to raise against each Defendant in the first few pages of his complaint. (Compl., ECF No. 1, PageID.3–5.) Plaintiff contends that Defendants Suvanto and Negrinelli interfered with Plaintiff's treatment for migraines. He notes that each of the nurse Defendants picked up healthcare requests. Plaintiff concludes that because he never received a response or treatment after the requests were picked up, they must have been destroyed. Plaintiff contends that such interference with his healthcare requests violated the Eighth Amendment. He alleges further that Defendants Suvanto and Negrinelli acted in retaliation for Plaintiff filing his first amended complaint in a prior lawsuit, thereby violating Plaintiff's First Amendment rights to participate in protected conduct.

Plaintiff contends that Defendant Brisette used excessive force by yanking on the "leash" attached to Plaintiff's handcuffs, resulting in the two men colliding. Plaintiff alleges further that Defendant Brisette violated Plaintiff's First Amendment right by warning Plaintiff not to file grievances against nurses.

Plaintiff contends that Defendants Scott, Schroeder, and Washington are liable for the constitutional violations of Defendants Suvanto and Negrinelli because the supervisory defendants failed to properly supervise the nurses. Plaintiff also arguably contends that Defendants Schroeder and Washington are liable for the constitutional violations by Defendant Brisette because they failed to properly supervise him.

The Court will address each of Plaintiff's claims below.[7]

### A.    Official Capacity Claims

Plaintiff brings claims against Defendants in their official as well as personal capacities. (Compl., ECF No. 1, PageID.3–5.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24

---

[7] In the complaint, Plaintiff specifically states that he is bringing claims against the remaining Defendants for excessive force, deliberate indifference, retaliation, and failure to supervise. (Compl., ECF No. 1, PageID.3–5.) Those claims implicate the protections of the First and Eighth Amendments. Because Plaintiff specifically identifies the claims that he intends to bring in this suit, the Court does not construe Plaintiff's complaint to raise any other claims.

F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

Moreover, Plaintiff seeks only monetary damages. But the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771. Similarly, Plaintiff may not seek monetary damages against Defendants in their official capacities. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). Therefore, the Court will dismiss Plaintiff's official capacity claims for money damages for failure to state a claim upon which relief may be granted.

### B.    Supervisory Liability

Plaintiff lists MDOC Director Washington, MBP Warden Schroeder, and MBP Health Unit Manager Scott as Defendants, but he fails to allege any facts showing how these Defendants were personally involved in the violation of his constitutional rights. Instead, Plaintiff mentions the supervisory position of each, and notes that Defendant Schroeder was made aware of Plaintiff's concerns by the grievance process.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to

allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Here, Plaintiff does not name Defendant Washington in the body of his complaint. (*See generally* Compl., ECF No. 1.) And his allegations regarding Defendants Schroeder and Scott do not go beyond identifying their supervisory position and then stating they failed to supervise. Plaintiff's claims against these Defendants fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent that Plaintiff seeks to hold these Defendants liable due to their supervisory positions, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300);

*see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*,

995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that these Defendants encouraged or

condoned the conduct of subordinates Suvanto, Negrinelli, or Brisette, or authorized, approved, or

knowingly acquiesced in their conduct. Accordingly, for these reasons, all of Plaintiff's claims

against Defendants Washington, Schroeder, and Scott will be dismissed for failure to state a claim

upon which relief may be granted.

### C.     Eighth Amendment Excessive Force

Plaintiff's excessive force allegations against Defendant Brisette, in their entirety, read as

follows:

> He then began to playfully tug the leash the Plaintiff was handcuffed to and when the Plaintiff told him to "stop playing with [me]" he came crashing into the plaintiff but making contact between his groin and Plaintiff['s] butt.

(Compl., ECF No. 1, PageID.8.)

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of

confinement which, although not physically barbarous, "involve the unnecessary and wanton

infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428

U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are

"totally without penological justification." *Id.* However, not every shove or restraint gives rise to

a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson*

21

*v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to Eighth Amendment claims. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

The facts alleged by Plaintiff—that Defendant Brisette playfully tugged the leash and then crashed into Plaintiff after Plaintiff asked the officer to stop—do not support the inference that

22

Brisette maliciously and sadistically intended to cause harm. There is no suggestion that Plaintiff suffered any injury, or even any pain, as the result of Defendant Brisette's actions. Although Defendant Brisette's actions are far from admirable, they do not satisfy the objective or subjective factual elements of an Eighth Amendment excessive force claim. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Brisette for failure to state a claim upon which relief may be granted.

### D.    Eighth Amendment Deliberate Indifference

Plaintiff alleges that Defendant Suvanto and Defendant Negrinelli violated his Eighth Amendment rights because they picked up Plaintiff's December 1 and December 13 healthcare requests. Because Plaintiff never received a response and because he was not seen by healthcare, he concludes that the healthcare requests were destroyed. (Compl., ECF No. 1, PageID.9.) He does not allege that Defendants Suvanto or Negrinelli destroyed the requests, but he appears to invite that inference.

The medical need identified in Plaintiff's healthcare requests was painful migraines. In the first request, he noted that the Motrin and Tylenol that Defendant Suvanto had provided "helped." *Delaney v. Waltanen*, No. 2:24-cv-194 (W.D. Mich.) (ECF No. 11-4). In the second request, Plaintiff reported that he was out of Tylenol. *Id.* (ECF No. 11-5). The second request also stated that he had advised the healthcare department regarding the lack of medication in the first request. *Id*. That is not the case because in the first request, Plaintiff acknowledged that he had in fact been receiving mediation and that it had been helping."[8] Moreover, Plaintiff categorized his first request as "Non-urgent." *Id*.

---

[8] The Sixth Circuit Court of Appeals recently reiterated that a court may consider documents referred to in a complaint, if they are integral to the claims, when determining whether the pleadings are sufficient:

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a medical professional's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."

---

The court may consider "documents attached to the pleadings," documents that are "referred to in the pleadings and [are] integral to the claims," and "matters of public record". . . . *Com. Money Ctr., Inc. v. Ill. Union Ins. Co*., 508 F.3d 327, 335–36 (6th Cir. 2007). And "[w]hen an exhibit contradicts the complaint, the exhibit trumps the allegations." *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 576 (6th Cir. 2021) (internal quotation marks and citation omitted); *accord Cagayat v. United Collection Bureau, Inc*., 952 F.3d 749, 755 (6th Cir. 2020) ("[I]f the pleadings internally contradict verifiable facts central to a plaintiff's claims, that makes the plaintiff's allegations implausible." (cleaned up)).

*Brown v. Louisville-Jefferson Cnty. Metro Gov't,* 135 F.4th 1022, 1030 (6th Cir. 2025).

*Blackmore*, 390 F.3d at 899; *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The Eighth Amendment's subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart*, 894 F.3d at 738 (quoting *Farmer*, 511 U.S. at 842).

Plaintiff alleges that he suffers from chronic migraines. Migraine pain is certainly not insignificant and may constitute a serious medical need. *See, e.g.*, *Morrison v. Mamis*, No. 08 CIV 4302 PAC AJP, 2008 WL 5451639, at *8 (S.D.N.Y. Dec. 18, 2008), *R&R adopted*, 2009 WL 2168845 (S.D.N.Y. July 20, 2009) (collecting cases and holding that "[d]epending upon the circumstances, . . . migraine headaches may qualify as 'serious medical needs' under the Eighth

Amendment"). Therefore, at this stage of the proceedings, the Court concludes that Plaintiff has adequately alleged a serious medical need.

Plaintiff's allegations fall short, however, with regard to the subjective component. Plaintiff alleges that Defendants knew of his serious medical need by virtue of his healthcare requests. It may be true that Defendants Suvanto and Negrinelli knew of Plaintiff's migraines, but at least with regard to Defendant Suvanto, Plaintiff's December 1 healthcare request indicated that the pain relievers she had supplied were effectively treating the problem and that his request was not urgent. Accordingly, Plaintiff does not allege facts that support the inference that Defendant Suvanto was aware of a substantial risk of serious harm to Plaintiff.

Moreover, Plaintiff has not alleged facts that support a reasonable inference that Defendant Suvanto disregarded such a risk. Plaintiff concludes that the December 1 healthcare request was destroyed, but he alleges no facts that support the inference of destruction or the inference that Defendant Suvanto destroyed the request.

Plaintiff notes that no later than one day after healthcare staff receive a request, a qualified healthcare provider must triage the information set forth in the request. (Compl., ECF No. 1, PageID.10.) Plaintiff does not allege any facts that support the inference that the nurse receiving the request is the "qualified healthcare provider" that triages the request or that Defendant Suvanto was the provider that triaged his request.

If the request is emergent, the triaging provider is to schedule the prisoner to be seen immediately by an appropriate qualified healthcare provider. (*Id.*) If the condition could be urgent, the triaging provider is to schedule an appointment to be seen by an appropriate qualified healthcare provider no later than the next business day. (*Id.*) In all other cases, the prisoner is to be

provided with a written response and an appointment, if appropriate, within five business days. (*Id.*)

Plaintiff notes that he did not receive a written response or an appointment. That "failure" could have occurred at any point in the process and occurred at the hands of any person participating in the process. (Compl., ECF No. 1, Page ID.13–14.) Plaintiff's invited inferences that the request must have been destroyed and destroyed by Defendant Suvanto are certainly possible, but they are purely speculative. And, "possible," is not enough to state a claim. A complaint that only "pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Here, Plaintiff's allegations "standing alone do not move the claim from possible and conceivable to plausible and cognizable." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1167 (6th Cir. 2022) (citing *Twombly*, 550 U.S. at 570).

Because none of Plaintiff's factual allegations bridge the gap between possibility and plausibility, even if Plaintiff could show that Defendant Suvanto was aware of a substantial risk of serious harm, the Court concludes that Plaintiff has failed to state a plausible claim that she disregarded that risk. Therefore, Plaintiff has failed to state an Eighth Amendment deliberate indifference claim against Defendant Suvanto upon which relief may be granted.

Plaintiff's allegations against Defendant Negrinelli suffer the same flaw regarding her purported disregard of the risk.[9] The absence of a written response or an appointment could have occurred at any point in the request process and occurred at the hands of any person participating in the process. The inference that the absence of a response or appointment means that Defendant

---

[9] Because the December 13 healthcare request noted that Plaintiff was out of Tylenol and that his need was urgent, to the extent Defendant Negrinelli read the request, there is a factual basis to infer that she was aware of a substantial risk of serious harm to Plaintiff.

Negrinelli destroyed the request is possible, but it is purely speculative. Accordingly, the Court concludes that Plaintiff has also failed to state an Eighth Amendment deliberate indifference claim against Defendant Negrinelli upon which relief may be granted.

### E.    First Amendment Retaliation

Plaintiff contends that Defendants Suvanto, Negrinelli, and Brisette retaliated against Plaintiff. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.    Defendants Suvanto and Negrinelli

Plaintiff contends that Defendants Suvanto and Negrinelli retaliated against Plaintiff by interfering with his medical care because he filed a lawsuit against other healthcare staff and corrections officers. Prisoners have a First Amendment right to access the courts by filing non-frivolous lawsuits challenging the conditions of confinement as well as the fact or duration of that confinement. *Thaddeus-X*, 175 F.3d at 391, 395; *see also Lewis v. Casey*, 518 U.S. 343, 355 (1996) (noting that "[t]he tools that [the First Amendment] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement"); *Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (explaining that *Lewis* changed actual injury to include requirement that action be non-frivolous).

At least some of Plaintiff's claims in the lawsuit survived screening. Accordingly, the Court concludes that Plaintiff has adequately alleged protected conduct.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

As noted above, Plaintiff's allegations invite the inference that Defendants Suvanto and Negrinelli destroyed Plaintiff's healthcare requests. That conduct is the only possible adverse action in Plaintiff's complaint. For the reasons stated above, Plaintiff's allegations do not state a plausible and cognizable claim that the healthcare requests were destroyed by Defendants. Accordingly, the Court concludes that Plaintiff's retaliation claim fails at the second step of the *Thaddeus-X* analysis.

Even if Plaintiff had properly alleged adverse action, he has not alleged facts to support the inference that the action was motivated by his filing of the prior lawsuit. Plaintiff notes that he sent the lawsuit in on November 26, 2024. It was not received by the Court, however, until December 2, 2024. *Delaney v. Schroeder*, No. 2:24-cv-172 (W.D. Mich.) (ECF No. 3). Plaintiff alleges no facts that support an inference that either of the nurses were aware of the lawsuit or any other protected activity. Service on defendants was not ordered until months later. Moreover, the only defendants that remained at that time were pseudonymous John or Jane Does.

Essentially, Plaintiff contends that because he filed the lawsuit on November 26, and the alleged destruction of the healthcare requests occurred within three weeks after that date, the

lawsuit must have prompted the alleged destruction. Although, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the Sixth Circuit, has been reluctant to find that temporal proximity between the protected conduct and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive). Here, as detailed above, besides Plaintiff's conclusory assertion that Defendants retaliated against him because he filed a lawsuit, Plaintiff alleges insufficient facts to show that the alleged adverse actions were in fact motivated by Plaintiff's protected conduct. Under these circumstances, the suggestion of temporal proximity alone is insufficient to show a retaliatory motive. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987) ("[A]lleging merely the ultimate fact of retaliation is insufficient.").

Furthermore, Plaintiff's "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks

omitted)). Therefore, assuming that Defendants' actions constituted adverse action, because Plaintiff fails to allege sufficient facts to show that Defendants were motivated by Plaintiff's protected conduct when they took the alleged adverse actions, Plaintiff fails to state a First Amendment retaliation claim against Defendants Suvanto and Negrinelli upon which relief may be granted.

### 2.    Defendant Brisette

Although hardly a typical presentation of a retaliation claim, it appears that Plaintiff has alleged facts to support each of the *Thaddeus-X* elements with regard to Defendant Brisette. The "protected conduct" might be either the stream of grievances Plaintiff filed during the weeks that preceded his encounter with Defendant Brisette or the identified prospect of grievances to come. The adverse action would be Defendant Brisette's instruction to not file grievances against the nurses coupled with the control and violence inherent in Brisette's literal pulling of Plaintiff's chain. Finally, the retaliatory motive is apparent in the immediate violence following the instruction to not file grievances. Although Plaintiff has by no means established a right to relief, the Court cannot dismiss Plaintiff's retaliation claim against Defendant Brisette at this stage of the proceedings.

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. The Court will deny Plaintiff's motion to amend his complaint because his proposed amendment would be futile. Pursuant to Federal Rule of Civil Procedure 21, the Court will drop from this action as misjoined Defendants Johnson, McAdams, Baldini, Harry, and Unknown Supervisor #1 and dismiss Plaintiff's claims against them without prejudice. Moreover, having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint against Defendants Washington, Schroeder, Scott, Suvanto and Negrinelli will be dismissed for failure to state a claim upon which

31

relief may be granted, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Finally, the Court will dismiss Plaintiff's Eighth Amendment excessive force claim against remaining Defendant Brisette for failure to state a claim upon which relief may be granted, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

Plaintiff's First Amendment retaliation claim against Defendant Brisette remains in the case.

The Court will enter an order consistent with this opinion.


Dated:  October 17, 2025                    /s/ *Maarten Vermaat*
                                            Maarten Vermaat
                                            United States Magistrate Judge